IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Curtis Hibbler, | ) |
| | ) |
| Plaintiff, | ) No. 05 C 6548 |
| | ) |
| v. | ) |
| | ) Hon. Mark Filip |
| HCD CHICAGO CORPORATION, | ) |
| a Delaware corporation, d/b/a | ) |
| OMNI CHICAGO HOTEL, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER
## GRANTING SUMMARY JUDGMENT

Curtis Hibbler ("Plaintiff" or "Mr. Hibbler") sued his former employer, HCD Chicago

Corp. d/b/a Omni Chicago Hotel ("Defendant" or "Omni"), for race discrimination under Title

VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. (See D.E. 42-6 at 3 (Amended

Complaint).) Mr. Hibbler alleges that Omni failed to promote him and fired him because of his

race. (Id.) Omni has moved for summary judgment. (See D.E. 41.) For the reasons discussed

below, Omni's motion is granted.

### FACTS

The Court takes the facts from the parties' Rule 56.1 Statements. (See D.E. 42; D.E. 49;

Pl.'s "Introduction and Statement of Fact" (hereinafter "Pl.'s SAF") (this document, which is not

docketed, appears to be Plaintiff's Statement of Additional Facts under L.R. 56.1(b)(3)(C)); and

D.E. 50). As explained below, Local Rule 56.1 governs the presentation and adjudication of

summary judgment motions, and it is designed to promote fair and efficient treatment of such

motions. See, e.g., Midwest Imports, Ltd. v. Coval, 71 F.3d 1311, 1316 (7th Cir. 1995).

## I.    Local Rule 56.1

Local Rule 56.1 ("L.R. 56.1") requires that statements of fact contain allegations of material fact, and the factual allegations must be supported by admissible record evidence. *See* L.R. 56.1; *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) (Castillo, J.). Although this Court is generally solicitous of *pro se* plaintiffs confronting the procedural requirements of litigation, precedent teaches that a *pro se* litigant is not exempt from meaningfully complying with L.R. 56.1, nor are such litigants provided immunity from the Rule's requirements. *See, e.g., Greer v. Bd. of Ed. of the City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001); *Stevens v. Navistar Int'l Transp. Corp.*, 244 F. Supp. 2d 906, 910 (N.D. Ill. 2002) (St. Eve, J.) (collecting cases); *accord, e.g., Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) (stating that procedural rules "apply to uncounseled litigants and must be enforced"). The Seventh Circuit teaches that a district court has broad discretion to require strict compliance with L.R. 56.1. *See Midwest Imports*, 71 F.3d at 1316 (collecting cases and stating, "[w]e have consistently and repeatedly required strict compliance"); *accord, e.g., Koszola v. Bd. of Ed. of City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Curran v. Kwon*, 153 F.3d 481, 486 (7th Cir. 1998) (collecting cases).

Where a party has offered a statement of fact without offering proper evidentiary support, the Court will not consider that statement. *Accord, e.g., Malec*, 191 F.R.D. at 583. Additionally, where a party has improperly denied a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems admitted that statement of fact. *See* L.R. 56.1(a), (b)(3)(B); *Malec*, 191 F.R.D. at 584. The Court disregards any additional statements of fact contained in a party's response rather than its statement of additional facts. *See, e.g., Malec*, 191 F.R.D. at 584. In addition to the various statements of fact required by L.R. 56.1, the Rule also

requires a supporting memorandum of law from each party, laying out the arguments for or against summary judgment. *See* L.R. 56.1(a)(2), (b)(2).

In this case, both parties have filed less-than-perfect L.R. 56.1 papers. Neither party's L.R. 56.1(b)(3) response sets forth or summarizes the statement of fact to which it is responding before offering a response. *(See generally* D.E. 49; D.E. 50.) Plaintiff fails to respond at all to Defendant's first eight statements of fact, and then responds in one compound paragraph to facts 9-11. *(See* D.E. 49 at 1–2). This is improper. *See, e.g., Malec,* 191 F.R.D. at 584. Where he does respond, Plaintiff's responses consist almost entirely of compound statements that are often nonresponsive narratives, instead of concise responses with record support, as the local rule requires. *See generally* D.E. 49; *compare* L.R. 56.1(b)(3)(B); *Malec,* 191 F.R.D. at 584. Defendant's response to Plaintiff's SAF also is often inadequate, as it typically only references portions of Defendant's Statement of Facts, which portions often are not germane. *(See generally* D.E. 50.)

Plaintiff's SAF merely reiterates his responses to Defendant's Statement of Facts, without adding any material information. It also cites to documents that Defendant argues (without contradiction) were not produced in discovery or even properly authenticated, which is inappropriate and potentially prejudicial to Defendant. *(See* D.E. 50 at 1 (stating that "[i]n facts 2, 3, 4, 6 and 9, plaintiff cites to documents Exhibit B, C, D1, D2 which are not supported by an affidavit and were not produced . . . during discovery").)[1] Plaintiff also fails to provide specific references (or any reference at all) to supporting materials for several of his additional facts.

---

[1] Even if these documents had been produced in discovery or had been authenticated as required by law, the result in the case would be no different. These documents are of limited, if any, relevance to the case.

(*E.g.*, Pl.'s SAF ¶¶ 18–19, 21–26, 29.) Plaintiff also cites to exhibits that either do not exist or have not been made part of the record. (*See, e.g.*, Pl.'s SAF ¶¶ 14–16 (citing to Exs. 5–7).)

It also appears that Plaintiff has substantially failed to file a memo in opposition to summary judgment, as is required by L.R. 56.1. *See* L.R. 56.1(a)(2), (b)(2); *Malec*, 191 F.R.D. at 585. At the tail end of his SAF, Plaintiff has included a one-page "Memorandum/Response," which the Court generously construes as Plaintiff's attempt at a memorandum, though it presents no meaningful caselaw or argument. (*See* Pl.'s SAF at 23.) Most significant, Plaintiff has failed to present, as required within the L.R. 56.1 framework, evidence constituting any triable case of discrimination.[2] In essence, Plaintiff acknowledges that at least some of his numerous reprimands and write-ups were warranted (including one that he concedes alone would have justified his dismissal), and he also argues that Defendant and its numerous supervisors often erred in concluding that his work, behavior, effort level, attendance, and timeliness were inadequate. Plaintiff also repeatedly asserts that various infractions (*e.g.*, for untimeliness) really were no big deal. As explained further below, this is inadequate under the law.

On the whole, Plaintiff's infractions are far more egregious than Defendant's, even granting Plaintiff the extra latitude that is always provided to *pro se* litigants in this courthouse. His procedural missteps alone warrant granting summary judgment in Defendant's favor. Those

---

[2] Defendant's filings include various affidavits presented within the framework required by the law. *See, e.g.*, D.E. 42-2 (Ms. Una Hennessy); D.E. 42-4 (Mr. Robert Ortman). Plaintiff seems to randomly entitle certain documents as "affidavits," but they do not comply with the requirements of either L.R. 56.2 or 28 U.S.C. § 1746. As such, these unsworn statements, made in violation of applicable law, are not credited. *Accord, e.g.*, *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985) (stating that "unsworn documents purporting to be affidavits may be rejected") (citing, *inter alia*, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 n.16 (1970)); *Kuntz v. I.R.S.*, No. 06-C-0043-C, 2007 WL 984453, at *4 (W.D. Wis. Feb. 20, 2007) (Crabb, J.) (citing *Collins v. Seeman*, 462 F.3d 757, 760 n.1 (7th Cir. 2006)); *Malec v. Sanford*, 191 F.R.D. 581, 584–85 (N.D. Ill. 2000).

4

failures require the Court to deem admitted many of Defendant's statements of material fact. *See Malec*, 191 F.R.D. at 584. Those failures also include failing to provide appropriate evidentiary support for many of his factual claims. Even setting aside the numerous defects in Plaintiff's papers, and construing disputed facts in Plaintiff's favor, as is required, the Court finds that summary judgment in favor of Defendant is warranted as a matter of law.

## II. Facts

Mr. Hibbler worked as a building engineer for Omni from 1993 until November 2004, when he was fired. (D.E. 42 ¶ 8.) As detailed below, the last seven years of Mr. Hibbler's employment with Omni were marked by repeated written reprimands for his poor work performance, chronic tardiness and absenteeism, and various other failings. (*Id.*; *id.* ¶¶ 22–23.) During his tenure, Mr. Hibbler was reprimanded by four different chief engineers, at least three different assistant chief engineers, and two directors of human resources. (*Id.* ¶ 10.) Mr. Hibbler acknowledges the validity of at least some of these write-ups, including one relating to a serious infraction (for entering the premises of one of Defendant's tenants after business hours without permission and using its facilities to send a personal facsimile), for which even Mr. Hibbler concedes alone would have warranted his dismissal. (*Id.* ¶¶ 22–23; Hibbler Dep. at 124–25, 213–14.) Mr. Hibbler acknowledges that Omni documented his performance problems, but opines—in his response to Defendant's Statement of Facts, instead of an accompanying memorandum of law, as is the proper procedure, *see* L.R. 56.1(b)(2)—that numerous reprimands were for insignificant issues and all of these "insignificant reprimands . . . had everything to do with the fact that I am an African-American man and little to do with my actual work performance." (D.E. 49 ¶ 1.) He further argues that "in order to continue to work in the racially charged environment I felt that it would be better for me to accept all accusations and write ups

5

without argument in order to remain in employ." (*Id.*) However, Mr. Hibbler offers no record support for his assertions, and generally provides no evidence supporting his claim that race motivated his poor reviews and seriatim reprimands from a variety of different people over several years' time.

With respect to more specific details, on May 7, 1998, Mr. Hibbler received a written warning for failing to clear a clogged toilet, which resulted in an unhappy guest who returned to her room to find the toilet still clogged ten hours after she had reported the problem. (D.E. 42 ¶ 12.) The warning stated that "Curtis's lack of thoroughness resulted in an unhappy guest and much wasted engineering time. Further violation of policy will result in progressive disciplinary action, up to and including termination." (*Id.*) The reprimand was signed by both Dale Clark, Omni's chief engineer and Mr. Hibbler's supervisor, and Una Hennessy, Omni's director of human resources. (*Id.*) Mr. Hibbler states in response that he *did* successfully unclog the toilet, but that the guest later that same evening reported that it was clogged again. (D.E. 49 ¶ 2.) His record citation does not support this assertion, however: he cites Mr. Clark's deposition, in which Mr. Hibbler asked Mr. Clark whether he remembered Mr. Hibbler explaining that he had unclogged the toilet successfully but that it subsequently clogged again, and in which Mr. Clark responded that he did not recall that being the case. (Clark Dep. at 32–34.) Mr. Hibbler offers no other support for his denial. Mr. Hibbler also asserts in his denial that Mr. Clark was aware at the time that the hotel was experiencing problems with the toilets generally, and that they were subsequently replaced, but there is no record support for this assertion. (D.E. 49 ¶ 2.)

Also on May 7, 1998, Mr. Hibbler received another written warning for failing to attempt to repair a broken air compressor, as he was required to do as a building engineer. (D.E. 42 ¶ 13.) Mr. Hibbler acknowledges the written warning, but responds that the compressor had

6

suffered problems for months, that he had recorded those problems and performed routine maintenance, but that the repair job in question was beyond his expertise and not properly his responsibility. (D.E. 49 ¶ 3.)

On January 14, 1999, Mr. Hibbler received another written warning for his failure to reassemble two hotel rooms properly after they had been renovated. (D.E. 42 ¶ 14.) His three supervisors noted that the work he performed was "incomplete and shoddy." (*Id.*) The warning stated that "[f]urther violations of this or other hotel policies will result in further disciplinary action up to and including termination." (*Id.*) Mr. Hibbler acknowledges the written warning, but says he was not given enough parts (outlet covers, towel bars, toilet paper dispensers, etc.) to properly outfit the rooms. (D.E. 49 ¶ 5.)

On March 7, 2000, Mr. Hibbler received two more reprimands, one for failing to complete his scheduled maintenance rounds on three consecutive days, and one for failing to turn in his daily work sheets on February 29 and March 2–4, as he was required to do. (D.E. 42 ¶ 15.) Mr. Hibbler acknowledges the reprimands, but says he *did* perform his rounds and submit his log sheets, but that the log sheets somehow wound up missing. (D.E. 49 ¶ 6.) Mr. Hibbler's record support for these assertions is deficient. He cites "exhibit 3," which he identifies as a log book page for an unspecified day, showing he shocked the pool as part of his rounds (*id.*), but there is no "exhibit 3" in the record. He also cites page 194 of his deposition to support the assertion that he completed the assigned work in question and recorded it, but that the log sheets were stolen; page 194 of Mr. Hibbler's deposition does not support such a claim, and in fact it acknowledges that he did not do the work (Hibbler Dep. at 194). He also elsewhere admits that he has no evidence (beyond his own speculations) that any of his coworkers "stole" his work sheets from

the seemingly generally locked office of his supervisor. (D.E. 49 ¶ 38; Buchholz Dep. at 13, 58–59.)

On October 22, 2000, Mr. Hibbler received a written warning for being late to work. (D.E. 42 ¶ 16.) Mr. Hibbler admits being late (albeit, by his account, only by two minutes), but again he cites to a nonexistent "Exhibit 6" in support (D.E. 49 ¶ 7), and therefore the Court disregards the allegedly *de minimus* nature of the infraction and deems admitted Defendant's statement of fact.[3]

On December 20, 2000, Mr. Hibbler received a written warning for repeatedly failing to fix a guest's leaking bathtub and failing to document the problem in a log book as required. (D.E. 42 ¶ 17.) Mr. Hibbler responds that the leaky bathtub incident actually occurred on December 17, 2000, "prior to 3:30 p.m.," and that, because his shift did not start until 4:00 p.m., it was not his job to respond to the call. (D.E. 49 ¶ 8.) Again, however, he cites to a nonexistent "Exhibit 5" to support his response, and therefore the Court deems Defendant's fact admitted.[4]

---

[3] Moreover, as discussed further below, precedent instructs that an employer is entitled to enforce its own rules and views about issues such as employee-punctuality, and federal courts are not entitled to second-guess its views about whether those rules or violations thereof are sufficiently "important" so as to justify an employment decision with respect to the plaintiff-employee.

[4] Even if one were to disregard Plaintiff's failure to adduce appropriate support for his putative denial under L.R. 56.1, Mr. Hibbler's objection (*i.e.*, that the hotel erroneously concluded that he should have fixed the leaky bathtub, and issued an erroneous reprimand on that basis) is not a basis to create a triable employment discrimination case in any event. *See, e.g.*, *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000) (collecting cases and teaching that "the focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered"); *Green v. Nat'l Steel Corp.*, 197 F.3d 894, 900 (7th Cir. 1999) (teaching that arguing about whether an employer's honestly held reason for an employment decision was well-founded, on the one hand, or wrong, on the other, is simply "a distraction").

8

On May 19, 2001, Mr. Hibbler received a written warning for being late to work. The warning again stated that "if further incidents occur it will result in a write-up, suspension & up to & including termination." (D.E. 42 ¶ 18.) Mr. Hibbler admits he was 22 minutes late for work on May 19. (D.E. 49 ¶ 9.)

On August 29, 2001, Mr. Hibbler received another warning for tardiness, failure to do any of the items on his assigned work list, and failure to turn in his daily work report. The warning states that "[h]e [*i.e.*, Mr. Hibbler] has been talked to about his tardiness before and it continues to be a problem." (D.E. 42 ¶ 19.) Mr. Hibbler responds that the "two 'tardies' indicated referred to times where I was called a few hours before my normal shift and asked to come early for overtime. I was not late for my originally scheduled shift which began at 4PM." (D.E. 49 ¶ 10.) Regarding the assigned work tasks, Mr. Hibbler states that he was unable to complete them because required parts were not available. (*Id.*) And, again, he claims his work sheets "were often being removed." (*Id.*) In support, Mr. Hibbler cites only "Hibbler Fact #7," presumably a reference to his Statement of Additional Facts. However, Pl.'s SAF ¶ 7, which asserts that Mr. Hibbler frequently reported harassment and that his worksheets were being stolen after he turned them in, but that his supervisors did nothing in response to his complaints, is supported only by "Exhibit G." Exhibit G is just a copy of Omni's Open Door/Grievance policy, and does not support any of Mr. Hibbler's assertions. Therefore, the Court deems admitted Defendant's statement of fact. Furthermore, Mr. Hibbler admits he never saw anyone steal his time sheets. (D.E. 42 ¶ 47; D.E. 49 ¶ 38.) On August 29, 2001, Mr. Hibbler also signed a "Commitment to Success" form acknowledging that any further infractions could result in termination. (D.E. 42 ¶ 20.) Mr. Hibbler admits signing the form, but asserts it was just a "formality." (D.E. 49 ¶ 11.)

However, he has no record support for this assertion, other than his own SAF ¶ 18, which is not supported by any record citation at all. (Pl.'s SAF ¶ 18.)

On November 28, 2001, Mr. Hibbler was issued a written warning for being nearly an hour late to work. (D.E. 42 ¶ 21.) Mr. Hibbler does not deny he was late. He states that his scheduled start time was 4:00 p.m. "When I reported earlier it was because I was asked to report to the job as soon as I could make it in." (D.E. 49 ¶ 12.) The Court interprets this response to mean that Mr. Hibbler claims he was asked to start his shift early on November 28; that he agreed to do so and got to work as soon as he could; but that he arrived substantially later than Defendant thought he should, or perhaps than Mr. Hibbler said he would, while still arriving before 4:00 p.m. However, his record citation to "Hibbler Fact #9" does not support this sort of favorable assertion. Mr. Hibbler's SAF ¶ 9 discusses a Dale Carnegie seminar he attended in 1989, to learn "how to deescalate a high intensity confrontations" [sic], and states that one of the techniques he learned involved accepting responsibility regardless of his "true involvement" in a situation. (Pl.'s SAF ¶ 9.) This narrative appears to be offered as an explanation for why Mr. Hibbler often signed documents acknowledging that he had received reprimands for infractions he had committed, even though he might not have subjectively agreed that he was blameworthy. This narrative has nothing to do with last minute changes in Mr. Hibbler's work schedule that might support an inference that he was not "really" late for work, at least if one went by his original schedule (which, in itself, is a questionable proposition—if Mr. Hibbler were called in to work early, and agreed to come in at a particular earlier time, it would seem appropriate for his employer to deem him "late" if he then arrived at work substantially later than that newly scheduled time). Moreover, and more fundamentally, Pl.'s SAF ¶ 9 is supported only by a citation to Mr. Hibbler's resume (Hibbler Ex. C), which, in addition to being irrelevant to any

10

assertion related to Mr. Hibbler's work schedule on November 28, 2001, is inadmissible even as proper evidence that he purportedly attended a Dale Carnegie seminar in 1989. One cannot use an unsworn document like the resume to provide competent evidence of the truth of what is typed on that resume. *See* Fed. R. Evid. 801(c).[5] Therefore, Pl.'s SAF ¶ 9 must be disregarded for lack of proper record support, and therefore, derivatively, Mr. Hibbler's response at D.E. 49 ¶ 12 must also be disregarded for lack of proper support. Defendant's statement of fact regarding Mr. Hibbler's arriving an hour late for work on November 28, 2001, is therefore deemed admitted. As a result of the infraction, Plaintiff received a two-day suspension. (D.E. 42 ¶ 21.)

On April 23, 2002, Omni's director of human resources, Una Hennessy, reprimanded Mr. Hibbler for a serious infraction: he had entered a building tenant's office after business hours without its permission and used its facsimile machine to send a personal fax. (D.E. 42 ¶ 22.) Not surprisingly, this constituted a serious breach of Omni policy. (*Id.*) Mr. Hibbler admits to this infraction. (D.E. 49 ¶ 13.) He also admits he could have properly been fired for it alone. (D.E. 42 ¶ 22; Hibbler Dep. at 213–14.)

On April 25, 2002, Ms. Hennessy sent Mr. Hibbler a letter summarizing his poor performance history and reiterating that it would no longer be tolerated. The letter stated, in part: "Curtis, at this point, I want you to understand that your position with the Omni Chicago Hotel is in serious jeopardy. We will no longer tolerate your behavior or performance failings. Any further violations of policy or procedures will result in your termination of employment." (D.E. 42 ¶ 23.)

---

[5] Defendant also asserts that the resume was not produced in discovery and therefore is not appropriate for use in the summary judgment adjudication. (D.E. 50 at 1.) Mr. Hibbler does not attempt to rebut Defendant's assertion. Given the other defects with the resume as competent evidence, the Court need not resolve this issue.

On May 7, 2003, Omni issued another written warning for Mr. Hibbler's continued failure to turn in his written work sheets. (D.E. 42 ¶ 24.) This written warning stated, *inter alia*, that continued infractions "will be followed by a written warning, suspension and up to termination." (*Id.*) On June 19, 2004, Omni issued a written warning for Mr. Hibbler's failure to complete a work assignment. (*Id.* ¶ 25.) On September 21, 2004, Omni issued another written reprimand for failure to turn in work sheets and for not putting enough effort into his job. (*Id.* ¶ 26.) The reprimand stated that Mr. Hibbler "need[ed] to turn in work sheet [for] every shift worked and need[ed] to put more of an effort into his job." (*Id.*) Mr. Hibbler also received a poor performance review on September 25, 2004, in which he was given the lowest score possible in three different categories: quantity of work ("slow output, seldom meets required standard"), attitude ("poor cooperation, argumentative"), and attendance/reliability ("serious degree of absences or tardiness"). (*Id.* ¶ 27.) Further, on September 26, 2004, he received a written reprimand for missing work six times and being late ten times between January and September of 2004. (*Id.* ¶ 28; *see also id.* (reprimand stating that, "Curtis understands any future violation whatsoever will result in immediate dismissal")). Mr. Hibbler responds that he "called in only after being forced to work double shifts several times without notice" and that he "provided the appropriate amount of time, at least 4 hours prior notice per departmental policy." (D.E. 49 ¶ 19.) He does not, however, offer appropriate (or any) record support for these assertions (*see id.*), which is inadequate under the law. He offers similar excuses for each of the other cited reprimands between May 2003 and September 2004: "worksheets were being removed" (*id.* ¶ 15); "[I] was busy and I forgot to pass this assignment on to the next shift" (*id.* ¶ 16); "this . . . was part of an ongoing effort to create a situation where I could be written up for incomplete work assignments as stated previously my work sheets were periodically being

12

removed" [sic] (*id.* ¶ 17). He argues the poor performance review was bogus because it was written by someone who did not observe his work. (*Id.* ¶ 18.) Again, most if not all of these assertions are unsupported by proper record citations. Nor do the assertions, on their own terms, properly refute Defendant's statements of fact that Plaintiff was regularly reprimanded for a variety of infractions, nor cast doubt on whether Defendant sincerely (even if, in Mr. Hibbler's view, erroneously) thought he was performing poorly and violating company policies.

On October 2, 2004, a guest complained that Mr. Hibbler failed to fix a malfunctioning air conditioning unit in his room. Mr. Hibbler also allegedly inappropriately told the guest that the room frequently had problems with its air conditioning, which made the guest unhappy he had been put in that room at all. (D.E. 42 ¶ 29.) Mr. Hibbler contends that he was not the building engineer who responded ("I contend that I was not the engineer who responded to the call") and further states that "[t]here was no proof that I responded to this call." (D.E. 49 ¶ 20.) These unsworn assertions are not supported by the cited portions of the deposition of one of the former human resources managers, Mary Stevenson, who reprimanded Mr. Hibbler. Those pages (Stevenson Dep. at 60–66) reveal that she and another manager concluded that Mr. Hibbler was the building engineer who made the hotel client "irate" (*id.* at 64), based in substantial part at least, on the description of the building engineer that the hotel client provided (*id.* at 64–65). The cited deposition pages further reveal that Mr. Hibbler apparently conceded that he had interacted with the customer in at least some capacity (*id.* at 61 (Ms. Stevenson stating that, "I remember you saying you went to the room and you attempted to fix the fan cover, something to that effect")), and while Mr. Hibbler attempted to have Ms. Stevenson testify that he told her there were two calls from that hotel client, Ms. Stevenson did not recall him making that statement. (*Id.*) In sum, the deposition testimony Mr. Hibbler has cited provides no material support for

13

most, if not all, of his contentions. Mr. Hibbler further contends (again, without appropriate record support, as the cited pages of Ms. Stevenson's deposition provide no support for Mr. Hibbler's apparent position) that the management staff was conspiring against him to try to fabricate evidence of poor work performance. (D.E. 49 ¶ 20 (citing Stevenson Dep. at 60–66.))

Mr. Hibbler received another written notice on October 14, 2004, about his tardiness and absenteeism. (D.E. 42 ¶ 30.) It stated:

> As you know you have received numerous warnings over the past few months resulting in a third written warning on September 26, 2004 for performance below standards (excessive absenteeism and tardiness). . . . I want you to understand that your position with Omni Chicago is in serious jeopardy. We will no longer tolerate behavior that does not meet Omni standards and/or substandard job performance. Any further violations of company policies or procedures will result in immediate dismissal of employment. This is your last chance.

(*Id.*) Omni asserts that Mr. Hibbler received repeated warnings throughout the fall of 2004 that his job was on the line (*id.* ¶ 31), but Mr. Hibbler denies this, despite admitting to the warnings in September and October, and again without record support. (D.E. 49 ¶ 22.)

On November 5, 2004—after more than six years of regular written reprimands for a variety of infractions ranging from tardiness, to unauthorized entry after hours into a tenant's premises to use its fax machine for personal purposes, to repeated failures to complete work assignments that left guests without properly functioning toilets or air conditioning—Omni finally fired Mr. Hibbler. (D.E. 42 ¶ 32.) The straw that ultimately broke the camel's back was arguably that—an arguably minor infraction wherein Mr. Hibbler was discovered watching television and eating chips during a work shift. (*Id.*) He claims he was on a break, but acknowledges that engineers did not have scheduled breaks; they just took them "whenever the engineer can find the time." (D.E. 49 ¶ 23.) It appears clear from Defendant's Statement of

14

Facts and Mr. Hibbler's response, however, that Mr. Hibbler took this particular break while he had outstanding work assignments to complete. (*See* D.E. 42 ¶ 32; D.E. 49 ¶ 23.)

Omni adds to its Statement of Facts that Mr. Hibbler never applied for a promotion (D.E. 42 ¶ 33), and that the most recent promotion he claims he "applied" for (he acknowledges he never filled out a formal application, but claims he did not know he needed to do so) was in either 2003, or more likely, 2002. (D.E. 42 ¶ 34; D.E. 49 ¶ 24.) Mr. Hibbler does not deny that the last promotion he sought was for a job given to George Main (D.E. 49 ¶ 25), and Omni asserts without contradiction that George Main received that job in 2002. (D.E. 42 ¶ 34.) Omni also states that Mr. Hibbler was not the most qualified candidate for that job, given his poor work performance. (D.E. 42 ¶ 35.) This work performance, as stated, included the unauthorized entry into a tenant's business premises after hours for the purpose of sending a personal fax, an infraction Mr. Hibbler does not deny and an infraction that alone, even by his admission, would have legitimately warranted his dismissal. (Hibbler Dep. at 213–14.) In this regard, Mr. Hibbler does not generally deny his poor work history; he merely states that when he requested information about promotions, Una Hennessy, the human resources director at the time, never mentioned anything about his qualifications. (D.E. 49 ¶ 26.) Again, he offers inadequate record support: he cites Omni's transfer policy, which has nothing to do with what Ms. Hennessy purportedly said to Mr. Hibbler about his individual chances for advancement. (*Id.*) Moreover, even if Ms. Hennessy did not specifically confront Mr. Hibbler about his prior infractions if and when he inquired about a potential promotion, that does not suggest that his infraction history

was irrelevant or could not be considered by the hotel in assessing whether Mr. Hibbler merited a position of higher responsibility.[6]

Mr. Hibbler was never told he was not promoted because of his race. (D.E. 42 ¶ 38; D.E. 49 ¶ 29.) He admits "some" of the reprimands he received were legitimate. (Hibbler Dep. at 124.) He even admits he has no evidence that he was discriminated against on the basis of race, or that he was treated less favorably than those employees outside his protected class:

> The burden of proof is on me to prove that an individual did what they did for the reasons I believe they did them for and I can't prove that. But I know because why would you do it? It's not just because you dislike a person. Because what you're doing is malicious. What you're doing is thought out and it's like you have motive behind what you're doing. And the way the discriminating laws are written, they are not written to be proven.

Hibbler Dep. at 116. He also admits he has no evidence that his termination was pretextual: "I have no documented evidence that my termination was illegitimate, especially since much of the evidence I would have obtained would come from the Omni and they refused to provide it, even after being ordered to by Judge Mark Filip." (D.E. 49 ¶ 34 (citing to Defendant's Answers to Plaintiff's Request for Production of Documents, which says nothing about this Court ordering Defendant to produce documents).)[7]

---

[6] Moreover, Defendant contends that George Main was promoted because he had run the building's central plant for years and therefore was deemed more qualified than Mr. Hibbler. (D.E. 42 ¶ 37.) Mr. Hibbler argues that he had comparable experience, but his record support for this assertion again appears deficient. (D.E. 49 ¶ 28 (citing Buccholz Dep. at 70–72 (wherein Mr. Hibbler appears to have attempted to ask Mr. Buccholz whether he recalled Mr. Hibbler helping run the central plant for a period of time, and Mr. Buccholz responded that he did not)).)

[7] At the risk of redundancy, the Court highlights that Plaintiff offers no support for his claim that Defendant has violated a court order to produce anything. If such an event had occurred, the Court of course would have heard argument and ruled accordingly. But Plaintiff offers no proof of such a violation; the Court also has *sua sponte* reviewed the docket sheet for such proof and found none, and the Court does not recollect such an alleged act of insubordination either.

Mr. Hibbler has no proof anyone at Omni treated him differently because of his race. He states only that "my experience is proof of my disparate treatment due to my race. The instances where my concerns, complaints & requests for advancement information were ignored are all examples of me being treated differently. This is in the face of other White engineers who were being promoted and white engineers who were not held accountable for their mistakes and/or indiscretions as I was." (D.E. 49 ¶ 36.) Other than George Main (who received the 2002 or 2003 promotion at issue), Mr. Hibbler identifies no other white co-workers by name, much less does he point out how they were similarly situated yet treated differently. Mr. Hibbler admits lying to a supervisor about having a tape of a conversation in which a co-worker supposedly called Mr. Hibbler a "black bastard" outside of his presence; there was no tape, and Mr. Hibbler did not hear the alleged conversation. (D.E. 42 ¶¶ 48–49; D.E. 49 ¶¶ 39–40.) Mr. Hibbler never filed a complaint about discriminatory behavior while he worked for Omni (D.E. 42 ¶ 50; D.E. 49 ¶ 41), he never filed a union grievance about his termination (Hibbler Dep. at 110–12), and he never told anyone at his union that he felt he was being discriminated against because of his race (Hibbler Dep. at 114–16).[8]

Before the Court is Omni's motion for summary judgment. For the reasons stated below, the motion is granted.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[8] The Court will not rehash Plaintiff's Statement of Additional Facts, as it is little more than a lengthened version of his response to Defendant's Statement of Facts. It does not put forth any new material information, much less any new probative record support for his claims.

17

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252.

## DISCUSSION

Plaintiff asserts his failure to promote and wrongful discharge claims under Title VII and Section 1981. Title VII states that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Under 42 U.S.C. § 1981(a), "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to the full and equal benefit of all laws . . . as is enjoyed by white citizens." Precedent teaches that analysis of claims under 42 U.S.C. § 1981 proceeds in the same manner as analysis of claims under Title

18

VII. *See, e.g.*, *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 641 n.5 (7th Cir. 2006) (citation omitted); *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060 n.4 (7th Cir. 2003) (collecting cases).

Mr. Hibbler can prove employment discrimination—in Defendant's failure to promote him and in his discharge—by using either the direct or indirect method of proof. *See, e.g.*, *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 299 (7th Cir. 2004). To establish discrimination under the direct method of proof, "a plaintiff must show either an acknowledgment of discriminatory intent by the defendant or circumstantial evidence that provides the basis for an inference of intentional discrimination." *Gorence v. Eagle Food Centers, Inc.*, 242 F.3d 759, 762 (7th Cir. 2001) (citing *Troupe v. May Dept. Stores Co.*, 20 F.3d 734 (7th Cir. 1994)). Caselaw establishes that direct proof of discrimination is relatively difficult to adduce. In this regard, the Seventh Circuit has defined direct evidence in the employment law context as evidence that, if believed by the trier of fact, will prove the particular issue in question without reliance on inference or presumption. *See, e.g.*, *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003) (collecting cases). The Seventh Circuit has repeatedly counseled that "[d]irect evidence usually requires an admission by the decisionmaker that his actions were based on" the illicit decision-making criterion. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 321 (7th Cir. 2003) (citing *Troupe*, 20 F.3d at 736); *see also Rogers*, 320 F.3d at 753 (stating that direct evidence "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus.") (internal quotation marks and citation omitted). The Seventh Circuit has explained that evidence of this sort is exemplified by statements such as "'I fired you because of your age'" or because of some other illicit criterion. *Robin v. Espo Engineering Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (citing *Troupe*, 20 F.3d at

19

736); *accord, e.g., Castleman v. ACME Boot Co.*, 959 F.2d 1417, 1420 (7th Cir. 1992) (teaching that direct evidence will "rarely" be found). Defendant argues that Mr. Hibbler offers no direct evidence of discrimination. Mr. Hibbler does not challenge this contention in his response, nor does he assert that he can present a triable case under the direct method of proof. A review of his L.R. 56.1 filings suggests no such argument either.

Instead, Mr. Hibbler attempts to use the indirect method of proof, which relies on the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[9] To establish a prima facie case under the indirect method, Mr. Hibbler must show that (1) he is a member of a protected class; (2) he was meeting his employer's legitimate expectations; (3) the employer took an adverse employment action against him; and (4) his employer treated similarly situated individuals outside the protected class more favorably. *See, e.g., Herron*, 388 F.3d at 299. If Mr. Hibbler meets his burden of establishing a prima facie case of discrimination, then Omni must articulate a legitimate, nondiscriminatory reason for its actions. *See, e.g., id.* (citation omitted). If Omni puts forth a nondiscriminatory reason for failing to promote and, ultimately, firing Mr. Hibbler, then Mr. Hibbler must present a triable issue concerning whether Omni's justification was really just a pretext for discrimination. *See, e.g., id.* A nonpretextual reason need not be a good reason, and the Court need not agree that it was a prudent, wise, or correct reason for the business action taken. *See, e.g., Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000) (collecting cases); *Green v. Nat'l Steel Corp.*, 197 F.3d 894, 900 (7th Cir. 1999). Pretext in this context means "a dishonest explanation, a lie rather than an oddity or an error." *See*

_____

[9] In what the Court has generously construed as Mr. Hibbler's summary judgment response, one of the three cases he cites is *McDonnell Douglas Corp. v. Green*, *supra*. (Pl.'s SAF at 23 (one page "Memorandum/response," under heading "Hibbler can establish his failure to promote claim").)

20

*Herron*, 388 F.3d at 299 ( internal quotation marks and citation omitted); *accord, e.g.,*
*Castleman*, 959 F.2d at 1422.

As discussed below, Mr. Hibbler has failed to present a prima facie case on either of his
claims. Even if he had presented a prima facie case, Omni has put forth legitimate reasons for its
actions that Mr. Hibbler has not shown were pretextual, which is another, independent, basis
justifying summary judgment.

## I.    Failure to Promote Claim

### A.    Plaintiff's Claim Is Untimely Under Title VII.

As a preliminary matter, Plaintiff's failure to promote claim is untimely under Title VII.
He claims the last promotion he sought and was denied was, at the latest, in 2003, when George
Main was promoted over him for the position of assistant chief engineer. (D.E. 49 ¶ 25; D.E. 42
¶ 34.) Mr. Hibbler did not file his Charge of Discrimination with the EEOC until March 9, 2005
(*see* D.E. 42-6 ¶ 7), more than 300 days after the alleged failure to promote. Failure to file a
timely charge with the EEOC precludes a subsequent lawsuit under Title VII—*see, e.g., Salas v.*
*Wisconsin Dept. of Corrections*, --- F.3d ----, 2007 WL 2048945, at *4 (7th Cir. July 18, 2007)
(citing *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 860 (7th Cir. 2005))—at least
absent exceptions not urged by Plaintiff or suggested by a *sua sponte* independent review of the
record. In this regard, Mr. Hibbler does not argue that he filed within 300 days, nor does he
argue that equitable tolling or any other doctrine should apply to preserve his failure to promote
claim; on the contrary, he appears to think he had two years to file his EEOC charge. (*See* Pl.'s
SAF at 23.) This is incorrect. Therefore, because he failed to file his EEOC charge within the
requisite 300-day period, Plaintiff's failure to promote claim is barred under Title VII.

## B. Plaintiff Has Not Established a Prima Facie Case in Any Event.

Even if Plaintiff's failure to promote claim were timely, it fails because he has not established the elements of a prima facie case of discrimination. It is undisputed that he has established the first element. He is African-American, and therefore a member of a protected class. (*See* D.E. 42-6 at 3.) However, he has not established the other three elements. He argues that he has suffered an adverse employment action in that he was not promoted to assistant chief engineer and that George Main, a white individual, was promoted instead. However, it appears that Mr. Hibbler never applied for this promotion. (*See* D.E. 42 ¶ 34; D.E. 49 ¶ 24.) He has no evidence that he did so, and he does not even argue that he did. Instead, he argues that he did not know he needed to apply formally for any promotion. (D.E. 49 ¶ 24.) He asserts that when he inquired about promotions, the human resources director never got back to him. (*Id.*) This is likely insufficient to meet his burden on this prong. However, the Court will assume for the sake of argument in Mr. Hibbler's favor that it is sufficient. Even so, Plaintiff's prima facie case fails because he has failed to establish the third and fourth elements.

In this regard, Mr. Hibbler has failed to make any showing that he was meeting Omni's legitimate expectations. Mr. Hibbler clearly exhibited performance problems—problems that were well documented for more than six years—and, although he makes excuses for many of the reprimands and written warnings he received, he does not deny that he received them. He also admits to being tardy on a number of occasions (*e.g.*, D.E. 49 ¶¶ 7, 9, 12), and to entering without permission into a tenant's business space after hours to use its facsimile services for personal purposes. (D.E. 42 ¶ 22.) Plaintiff himself concedes that this constituted an infraction of company policy so material that it would have been a legitimate basis by itself to fire him (*id.*; *see also* Hibbler Dep. at 213–14); *a fortiori*, this serious infraction in the Spring of 2002 was a

22

legitimate basis not to promote him during the time period in question. (D.E. 42 ¶ 22; D.E. 49 ¶ 13; *see also* D.E. 42 ¶ 35 (Defendant explaining that Plaintiff was not the most qualified candidate because of the many reprimands he had received for poor performance).)

Similarly, Omni management repeatedly warned Mr. Hibbler that continued infractions could and would result in termination. In response, Mr. Hibbler typically minimizes the significance of those infractions he admits (*e.g.*, various tardiness episodes and the facsimile incident) or suggests that Defendant did not accurately evaluate the quality of his work or the nature of various building problems he allegedly failed to correct as a building engineer. However, even discounting all reprimands except those for tardiness—he openly admits to being late from time to time, though he attempts to minimize the significance of this—summary judgment still would be warranted, even if the unauthorized entry/facsimile incident had not indisputably occurred. Plaintiff received multiple written warnings on the tardiness issue alone; despite his attempts to minimize these infractions, he could not have reasonably believed that they would be tolerated forever or rewarded with a promotion. *See Cowan v. Glenbrook Sec. Services, Inc.*, 123 F.3d 438, 445 (7th Cir. 1997); *Campbell v. Dominick's Finer Foods, Inc.*, 85 F. Supp. 2d 866, 871–72 (N.D. Ill. 2000); *see also Rush v. McDonald's Corp.*, 966 F.2d 1104, 1115 (7th Cir. 1992) ("Reliability and promptness are important considerations in maintaining a work force.").

Moreover, even if Mr. Hibbler had meaningfully challenged Omni's assessment of his work performance, his own subjective assessment is not relevant to whether summary judgment is warranted. Seventh Circuit precedent teaches that, "[i]t is well settled . . . that a plaintiff's own opinions about her work performance or qualifications do not sufficiently cast doubt on the legitimacy of her employer's proffered reasons for its employment actions." *Ost v. West*

*Suburban Travelers Limousine, Inc.*, 88 F.3d 435, 441 (7th Cir. 1996) (citation omitted); *accord, e.g., Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 602 (7th Cir. 2001) (collecting cases); *Adusumilli v. City of Chicago*, 164 F.3d 353, 363 (7th Cir. 1998) (teaching that an employee cannot create a triable case of alleged discrimination simply by disagreeing with his employer about whether he was performing adequately or well).

With respect to the fourth prong of the prima facie case, Mr. Hibbler also makes no meaningful attempt to show that a similarly situated employee, not in a protected class, was promoted. Mr. Hibbler points to George Main, a white man, as such an employee, but Mr. Main seemingly was not similarly situated to Mr. Hibbler. Omni points out that Mr. Main received a promotion because he had experience running the building's central plant heating and cooling system—experience that Mr. Hibbler seemingly lacked, at least as one can tell based on the record as presented. (D.E. 41 at 13; D.E. 42 ¶ 37.) In any event, Mr. Hibbler, as explained above, has failed to adduce sufficient evidence on prong three of the prima facie case analysis, and he also fails to adduce a triable case concerning pretext.

Mr. Hibbler also references other white employees (though not by name) whom he says were promoted ahead of him, even though he had seniority. (D.E. 49 ¶ 27.) Mr. Hibbler's failure to identify the employees in question and their particular qualifications makes it impossible for the Court to determine whether they were similarly situated or not. A "similarly situated" individual is one who is "directly comparable to . . . [the plaintiff] in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (collecting cases). To determine whether two employees are directly comparable, a court looks at all the relevant factors, which typically include, *inter alia*, whether the employees were subordinate to the same supervisor and had comparable experience, education, and other qualifications—provided the

24

employer considered these latter factors in making the personnel decision. *See, e.g., Hull v. Stoughton Trailers, LLC*, 445 F.3d 949, 952 (7th Cir. 2006) (collecting cases); *see also Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617–18 (7th Cir. 2000) (teaching that, where an employee claims that he was disciplined more harshly than another employee, he "must show that he is similarly situated with respect to performance, qualifications, and conduct. . . . This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.") (citation omitted). Plaintiff has offered no evidence of other employees who were "directly comparable" to him "in all respects," or of any promotions of those comparators. *Patterson*, 281 F.3d at 680.

In sum, Plaintiff has failed—on multiple, independent grounds—to present a prima facie case. Any one of these failures would warrant granting summary judgment for Defendant on Plaintiff's failure to promote claim.

## C.    Plaintiff Has Not Established Pretext.

Even if Plaintiff had made out a prima facie case (and he has not), summary judgment still would independently be warranted because Omni has presented a nondiscriminatory reason for its actions—Plaintiff's poor performance—and Plaintiff has not put forth any evidence that this reason is pretextual. As discussed above, Plaintiff does not dispute many of the infractions documented against him—including the unauthorized entry/facsimile incident that he concedes alone could properly have warranted his firing. But even if he could show that Omni's assessment of his performance were inaccurate, this would not be enough to show pretext for discrimination. *See Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 602 (7th Cir. 2001) ("[T]he court's role is not to determine whether [the employer's] decision was right, but whether [the

employee] presented sufficient evidence that [the employer's] reason was a lie for the action it took.") (internal quotation marks and citation omitted). Mr. Hibbler has presented no such evidence. He admits that he was late to work on multiple occasions—in some cases between 20 minutes and an hour late—and that he used a tenant's fax machine in violation of policy, an admitted firing offense. The Local Rule 56.1 statements further confirm that he has no evidence that his termination was pretextual or illegitimate. (D.E. 42 ¶ 43 ("Mr. Hibbler has no evidence that his termination was pretextual or illegitimate.") (citing interrogatory answers); D.E. 49 ¶ 34 (effectively admitting the assertion).)

In addition, and independently, with respect to the pretext analysis, Plaintiff's case fails because he has failed to meet the Seventh Circuit's standard for when an employer explains that it selected the most qualified candidate for a position or promotion. In this regard, to establish pretext in a failure to promote case, the Seventh Circuit has held that where, as here, an employer's proffered non-discriminatory reason is that it selected the most qualified or most reliable candidate for a position, evidence of the plaintiff-applicant's competing qualifications does not constitute evidence of pretext unless those differences are so materially favorable to the plaintiff that there can be no debate among reasonable persons that the plaintiff was clearly the better candidate for the position. Specifically, in *Millbrook v. IBP, Inc.*, 280 F.3d 1169 (7th Cir. 2002), the Seventh Circuit collected precedent from several other federal circuits and stated:

> This standard—first set forth by the Fifth Circuit, and since followed by four other circuits—is appropriate. Accordingly, we now hold that where an employer's proffered non-discriminatory reason for its employment decision is that it selected the most qualified candidate, evidence of the applicants' competing qualifications does not constitute evidence of pretext unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue. . . . In other words, in effect, the plaintiff's credentials would have to be so superior to the credentials of the person

26

selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.

*Id.* at 1180–81 (internal quotation marks and citations omitted).

As stated, Plaintiff has (in violation of L.R. 56.1) substantially failed to file a memorandum in opposition to Defendant's summary judgment motion. The Court has nonetheless reviewed the record as assembled under applicable summary judgment standards. Putting aside Plaintiff's numerous procedural defects, nothing in those papers suggests that Plaintiff can meet the federal standard cited immediately above concerning pretext. (*Accord* D.E. 42 ¶ 43; D.E. 49 ¶ 34.) As Defendant contends, this provides another independent ground on which it is entitled to summary judgment under the law.

## II. Wrongful Termination Claim

Mr. Hibbler's wrongful termination claim fails for the same reasons his failure to promote claim fails. Although he undisputedly suffered an adverse employment action with respect to this claim—he was fired—he has presented no evidence that he was meeting Omni's legitimate expectations, whereas Omni has presented extensive evidence that he was not. In this regard, the Court notes that, even putting aside the universe of issues regarding which Mr. Hibbler contends that his employer erroneously evaluated his performance as poor and inadequate, he admits that he entered into a tenant's premises without authorization, after business hours, to use its facsimile facilities. (D.E. 42 ¶¶ 22–23.) Mr. Hibbler also acknowledges that this infraction alone would have justified his dismissal. (*Id.* ¶ 22.) As previously discussed, he also acknowledges various episodes of being late for work, and while he contends that these infractions were really not any big deal, as stated above, precedent teaches that an employer may make employment decisions based on whether an employee has been punctual or not. *See, e.g., Cowan,* 123 F.3d at

445; *Rush*, 966 F.2d at 1115 ("Reliability and promptness are important considerations in maintaining a work force."); *Campbell*, 85 F. Supp. 2d at 871–72. Therefore, he has failed to establish a prima facie case on this claim as well.

Likewise, and again independently, he has failed to identify someone similarly situated to him in all respects (*e.g.*, someone with a long history of documented infractions, including an admitted violation so severe that Plaintiff himself concedes that it alone would justify dismissal) who was not fired. In this regard, although the record is not perfectly developed on the comparator issue (thereby warranting summary judgment for Defendant, as Plaintiff bears the burden of proof on the issue), the record reflects that other Omni employees received reprimands and were terminated for progressive discipline similarly to Mr. Hibbler, including white and Latino individuals in the building engineering department. (D.E. 42 ¶ 42.) In sum, there is no comparator identified as required, and the record suggests that similar violators of different races and/or ethnicities were fired.

Finally with respect to this claim, as with the failure to promote claim, Mr. Hibbler has failed to present any evidence that Omni's well documented reasons for firing him—his countless performance problems over a number of years—were a pretext for discrimination. In this regard, the Court notes that precedent instructs that a district court does not properly start down the path of assessing whether an employer's sincerely held basis for dismissal was well reasoned or sound, so long as there is not a triable case of whether it evinced discrimination under the law. *See, e.g., Green*, 197 F.3d at 900 (explaining that arguing about whether a company or public employer was correct concerning an honestly held basis for an employee's firing is "a distraction"); *accord, e.g., Kariotis v. Navistar Int'l Transportation Corp.*, 131 F.3d 672, 677 (7th Cir. 1997) (citation omitted). Moreover, precedent is clear that evidence that

shows that an employee believes that his employer incorrectly assessed his abilities or performance does not shed light on whether the employer is lying about its negative assessments of that employee, *see, e.g.*, *Olsen*, 267 F.3d at 602 (citing *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 399 (7th Cir. 1998)), which is what, at a minimum, is required to draw an inference of discriminatory motive. *See, e.g.*, *Olsen*, 267 F.3d at 602 (citation omitted); *Adusumilli*, 164 F.3d at 363. Even if Mr. Hibbler believes that Defendant did not accurately evaluate his abilities, or did not exhibit sufficient prudence regarding what Mr. Hibbler contends are issues of insignificant consequence (*e.g.*, his repeated tardiness), that does not create a triable case on the pretext prong of the analysis. This provides another independent ground for summary judgment on the wrongful termination claim.

## III. The Court Considers Any Hostile Work Environment Claim to Be Waived on the Record Presented to Date

Plaintiff has not alleged a hostile work environment claim in his Amended Complaint. However, the narrative attached to his Amended Complaint mentions in passing once that "my work environment was hostile." (D.E. 42-6 at 10.) Defendant addresses this putative claim in its brief and explains why, in its view, any such claim would be subject to summary judgment. Plaintiff offers no response to this argument in what the Court has generously construed in his favor as his summary judgment response. (Pl.'s SAF at 23.)

Precedent teaches that courts are not responsible for attempting to fairly and reliably adjudicate issues or claims that have not been presented in any responsible manner by a litigant. *See, e.g.*, *Smith v. Northeastern Ill. Univ.*, 388 F.3d 559, 569 (7th Cir. 2004) (teaching that cursory and undeveloped arguments are waived); *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 551 (7th Cir. 2004) ("Judges are not like pigs, hunting for truffles buried in briefs" or the

29

record.). As stated, Defendant offered a comprehensive argument, in a seeming abundance of caution, as to why any seemingly unraised hostile-workplace claim would have been unavailing under the law. Plaintiff does not even attempt to offer caselaw or argument suggesting either that he actually did attempt to raise such a claim, or that Defendant's extended refutation was defective in any way.

Under such circumstances, the Court considers any putative hostile-workplace claim to be abandoned under the authority cited above. While the Court has been able, even in the absence of meaningful argument from Plaintiff, to assess whether his failure to promote and wrongful discrimination claims were trial-worthy, Plaintiff at least filed an amended complaint that addressed those issues. Moreover, both of those issues concern at least relatively discrete business decisions, so they are more amenable to adjudication even where, as here, Plaintiff offers little by way of response to Defendant's summary judgment memoranda. However, in this case the Court cannot, at least without abandoning any pretense of a neutral role, take up the task of serving as Plaintiff's ad hoc counsel and attempting to construct a triable hostile workplace case for him in response to Defendant's comprehensive argument about why none exists, particularly where it appears that Plaintiff never attempted to raise such a claim in the first place.

To the extent Plaintiff would attempt to raise such a claim, he is respectfully advised that adducing a triable hostile workplace claim is at least a relatively difficult task under Seventh Circuit precedent. The Seventh Circuit has repeatedly characterized a hostile workplace as one that is sufficiently bad that it fairly can be described as "'hellish.'" *Whittaker v. Northern Illinois University*, 424 F.3d 640, 645 (7th Cir. 2005) (quoting *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1013 (7th Cir.1997)); *accord, e.g., Herron*, 388 F.3d at 303. Although the Court is reluctant to ascribe talismanic significance to the "hellish" phrase, it is clear that a plaintiff

cannot advance a triable hostile workplace case under Seventh Circuit precedent readily. *See,*
*e.g., Whittaker,* 424 F.3d at 645 ("Indeed, the threshold for plaintiffs is high . . . . "). Moreover,
the Supreme Court has stated that, "mere utterance of an ethnic or racial epithet which engenders
offensive feelings in an employee would not sufficiently alter terms and conditions of
employment to violate Title VII." *Faragher v. City of Boca Raton,* 524 U.S. 775, 787 (1998)
(internal quotation marks and citation omitted). The Supreme Court has further stated that a
workplace must be "permeated with 'discriminatory intimidation, ridicule, and insult,'" so
"'severe or pervasive [as] to alter the conditions of the victim's employment and create an
abusive working environment.'" *Harris v. Forklift Sys. Inc.,* 510 U.S. 17, 21 (1993) (quoting
*Meritor Savings Bank FSB v. Vinson,* 477 U.S. 57, 65, 67 (1986)).

  As stated, the Court considers any putative hostile workplace claim defaulted under the
record assembled. Normally, the Court would consider that the once-and-for-all end of the
putative claim. However, because Mr. Hibbler is proceeding *pro se,* if (1) he actually intended to
raise a hostile workplace claim, notwithstanding that he offered no meaningful suggestion that he
did so; and (2) he believes he has some meaningful response to Defendant's argument as to why
a triable claim has not been assembled on the record in the case, the Court would at least
consider hearing Mr. Hibbler's untimely argument presented through the lens of a promptly filed
motion to reconsider. Mr. Hibbler is respectfully advised that, of course, the legal standards cited
above will be applied by the Court. In addition, to the extent such a claim is purported to be
advanced under Title VII, Mr. Hibbler would need to be able to show that he fairly presented
such a claim to the EEOC in his charge, such that the EEOC had a chance to investigate such a
claim and attempt to mediate, if it found any colorable basis for such a claim. *See, e.g., Cheek v.*

31

*Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996) (citation omitted); *Chambers v. American Trans Air, Inc.*, 17 F.3d 998, 1003 (7th Cir. 1994).

In sum, Plaintiff has given the Court no reason to believe either that (1) he intended to raise a hostile workplace claim; or (2) that Defendant's extended argument about why such a putative claim would be subject to summary judgment under applicable precedent is incorrect. The Court considers any putative hostile workplace claim abandoned. *See, e.g.*, *Smith*, 388 F.3d at 569; *Jennings*, 383 F.3d at 551. If Plaintiff wants to attempt to have any argument concerning such a claim heard, he should promptly move to do so. If not, the Court considers such a claim abandoned and likely meritless for the reasons stated at length by Defendant.

## CONCLUSION

For the reasons given above, Defendant's motion for summary judgment is granted. So ordered.

Mark Filip
United States District Judge
Northern District of Illinois

Date: 8/8/07